## III - INTERROGATORIES

1. Identify each and every Shipley product, or group of products adapted to be used together, which Shipley sold and/or publicly used in Japan, prior to September 20, 1985, which would fall within the scope of at least one claim of either or both of Japanese Patents Nos. 2140707 and 2807637.

2. For each of the products identified in response to Interrogatory 1, identify:

a) each person who purchased each of the products in Japan prior to September 20, 1985, and whether each such person was under an obligation not to analyze the contents of any such products purchased, identifying any documents concerning such obligation, and

b) the date of each sale, and the quantity and purchase price of the product sold.

3. State the date of first sale, and identify the person in Japan, who first purchased a tin or tin/lead alloy electroplating product, which would fall within the scope of at least one claim of either or both of Japanese Patents Nos. 2140707 and 2807637.

4. For each year within the period 1981 through 1986, identify each officer and director of Shipley in Japan, who had chief responsibility for supervisory, executive, or other significant non-ministerial responsibility or authority in Japan for distribution, sale, or selection for sale, all products, or group of products adapted to be used together, which would fall within the scope of at least one claim of either or both of Japanese Patents Nos. 2140707 and 2807637.

5. Identify each and every Shipley product, or group of products adapted to be used together, for electroplating tin or tin/lead alloy, which contained alkyl sulfonic acid, an alkylene oxide wetting agent and a position isomer of dihydroxy benzene, and which was sold in Japan prior to September 20, 1985.

6. As to each product identified in response to Interrogatory 5, if Shipley contends any such

products or group of products do not fall within the scope of at least one claim of either of Japanese Patents Nos. 2140707 and 2807637, explain all reasons for such contention(s).

7. Identify each product, sold by Shipley in Japan prior to September 20, 1985, under the trademark SOLDERON, or under any trade designtation which includes the word SOLDERON (e.g. SOLDERON NF).

8. Identify all persons who provided information on which any answers to the foregoing Interrogatories and Requests for Admission were based, and the Interrogatory and/or Request concerning which that individual provided information.

9. Identify each and every Shipley purchaser, distributor, customer, licensee, importer, as well as any person who was given samples by Shipley, and each and every person who was either given instructions on use or provided demonstrations by Shipley, of electroplating products or processes, using a bath containing an alkyl sulfonic acid, prior to September 20, 1985.

10. For each Request for Admission, identify each communication and all documents, relied on to respond to said Requests for Admissions.

11. If the answer to any Request for Admission is other than an absolute admission, explain all reasons for each such failure to admit, and identify each document which supports each such failure to admit, if any.

12. If the answer to any request for Admission is other than an absolute admission, and the reason for the failure to admit such request is a claimed lack of sufficient information to form a belief as to the truth of such Request, then:

    a) explain the extent of knowledge and belief held by Shipley as to the truth of the Request, and identify each document which relates to the extent of Shipley's knowledge, and

    b) explain the extent and results of any reasonable inquiry made by Shipley to

answer the Request.

## IV - REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

1. Produce all documents relied on in preparing Answers to the foregoing Interrogatories, specifying the Answer to Interrogatory in which each document is identified.

2. Produce all documents identified in response to any of the foregoing Interrogatories, specifying the Interrogatory with which each document is identified.

3. Produce one copy of each advertising or promotional material used by Shipley in the advertising of each tin or tin/alloy electroplating product, or group of products adapted to be used together, identified in response to each of the foregoing Interrogatories.

4. Produce all documents and things containing information concerning the chemical content or composition of all tin or tin/lead electroplating products, containing alkyl sulfonic acid or a position isomer of dihydroxy benzene, sold by Shipley in Japan prior to September 20, 1985 including, but not limited to: formula sheets, product specifications, technical specifications, quality control test results, laboratory notebooks, import or export control documents, and materials specification data sheets.

Respectfully Submitted,

Ishihara Chemical Co., Ltd.

Roger S. Thompson, Esq. (RT 2117)
Morrison Law Firm
145 North Fifth Avenue
Mt. Vernon, New York    10550
(914) 667-6755

Dated: October 26, 1999

-17-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:  The Application of ISHIHARA CHEMICAL CO., LTD. for an ORDER TO TAKE DISCOVERY OF SHIPLEY COMPANY, L.L.C., PURSUANT TO 28 U.S.C. §1782 | MISC. 99-232 (FB)<br><br>ISHIHARA CHEMICAL CO., LTD., AMENDED REQUEST FOR PRODUCTION OF DOCUMENTS BY SHIPLEY CO., L.L.C. |

Pursuant to the Order of Judge Block dated November 16, 2000, and in accordance with 28 U.S.C. §1782 and Rules 26 and 34 of the Federal Rules of Civil Procedure, Ishihara Chemical Co., Ltd. hereby respectfully requests that Shipley Company, L.L.C. produce for inspection and copying at the offices of Lucas & Just, The Lincoln Building, 60 East 42nd Street, New York, NY 10165, each of the documents identified below in its possession, custody, or control, or in the possession, custody, or control of any of its agents, within thirty (30) days of the date of service hereof.

1

## DEFINITIONS

1.  This Request incorporates the definitions and instructions contained in Rules 26.2 and 26.3 of the Local Civil Rules of the United States District Court for the Eastern District of New York, including those pertaining to privilege.

2.  The Uniform Definitions in Discovery Requests are incorporated by reference, and Defendant is referred to Local Rule 26.3 for their precise terms.

3.  As used herein, the term "SOLDERON" means a tin or tin/lead alloy electroplating product, whether sold as a single unit or sold as all or part of a group of products adapted to be used together.  The term "SOLDERON" specifically includes various species, such as SOLDERON NF, SOLDERON BR, SOLDERON MHS and SOLDERON BHS.

4.  As used herein, the term "different SOLDERON product" means any difference in chemical composition or amount.

2

DOCUMENT REQUESTS

REQUEST NO. 1

Documents which show the chemical constituents and amounts of each different SOLDERON product sold or used in Japan prior to September 20, 1985.  Only one document need be produced for each different SOLDERON product.

REQUEST NO. 2

Documents which show the first and second sales of each different SOLDERON product to or within Japan:

    (a)  to a subsidiary;

    (b)  to a distributor;

    (c)  to a customer.

Respectfully submitted,

LUCAS & JUST

By _____

David L. Just (DJ 1756)

Dated:  New York, New York
       December 5, 2000

David L. Just, Esq. (DJ 1756)
Donald C. Lucas, Esq. (DL 6675)
LUCAS & JUST
60 East 42nd Street
New York, New York 10165
Tel: (212) 682-4980
Fax: (212) 573-6127
Attorneys for Ishihara

CERTIFICATE OF SERVICE   SERVED BY HAND
I CERTIFY THAT A COPY OF THIS PAPER WAS SENT BY FIRST
CLASS MAIL, THIS __5__ DAY OF __DEC__, __00__
POSTAGE PREPAID, TO THE LAST KNOWN ADDRESS OF THE
ATTORNEY OF RECORD FOR EACH OF THE PARTIES TO THIS
ACTION.

_____

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:  The Application of ) | MISC. 99-232 (FB) |
| ISHIHARA CHEMICAL CO., LTD. ) | |
| for an ORDER TO TAKE DISCOVERY OF ) | NOTICE OF DEPOSITION OF |
| SHIPLEY COMPANY, L.L.C., ) | SHIPLEY CO., L.L.C. |
| PURSUANT TO 28 U.S.C. §1782 ) | UNDER F.R.C.P. 30(b)(6) |
| ) | |

TO:   PENNIE & EDMONDS
      1155 Avenue of the Americas
      New York, NY 10036

Please take notice that, pursuant to the Order of Judge Block dated November 16, 2000, and in accordance with 28 U.S.C. §1782 and Rule 30(b)(6) of the Federal Rules of Civil Procedure, Ishihara Chemical Co., Ltd. will take the deposition on oral examination of the person or persons designated by Shipley Company, L.L.C. on the subject matters set forth below.  The deposition(s) will begin at 10:00 a.m. on December 19, 2000 at the offices of Lucas & Just, The Lincoln Building, 60 East 42nd Street, New York, NY 10165, or at such other date, time and place as is mutually agreed to between the parties, and will continue from day to day until completed.

1

The deposition(s) will be limited to the subjects of Ishihara's Amended Request for Production of Documents attached hereto, including identification of documents which are produced and subject areas where documents have been requested but not produced.

You are invited to attend and cross-examine.

Respectfully submitted,

LUCAS & JUST

By _____
David L. Just (DJ 1756)

Dated:   New York, New York
         December 5, 2000

David L. Just, Esq. (DJ 1756)
Donald C. Lucas, Esq. (DL 6675)
LUCAS & JUST
60 East 42nd Street
New York, New York 10165
Tel: (212) 682-4980
Fax: (212) 573-6127
Attorneys for Ishihara

CERTIFICATE OF SERVICE  *SERVED BY HAND*
I CERTIFY THAT A COPY OF THIS PAPER WAS ~~SENT BY FIRST CLASS MAIL~~, THIS __5__ DAY OF _DEC_ , 20_0_ POSTAGE PREPAID, TO THE LAST KNOWN ADDRESS OF THE ATTORNEY OF RECORD FOR EACH OF THE PARTIES TO THIS ACTION.

_____

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In re: The Application of ISHIHARA CHEMICAL
CO., LTD. for an ORDER TO TAKE
DISCOVERY OF SHIPLEY COMPANY, L.L.C.,
PURSUANT TO 28 U.S.C. § 1782

Misc No. 99-232 (FB)

## DECLARATION OF RICHARD B. KESSLER

I, Richard B. Kessler, hereby declare as follows:

1.     I am currently Vice President of Operations of Shipley Company L.L.C.,
("Shipley). I held the position of Chief Operating Officer and Executive Vice President at
LeaRonal, Inc. ("LeaRonal"), a company acquired by Shipley in January 1999, from 1994 until
the acquisition.[1]

2.     I write this declaration in support of Shipley's Motion To Vacate The Court's
Order Compelling Discovery, Quash The Subpoena and Deny Discovery served by Ishihara
Chemical Co., Ltd. ("Ishihara"). I have reviewed the discovery sought by Ishihara and wish to
explain the confidential/trade secret status of the material potentially subject to the discovery.

3.     All formulations (compositions) of LeaRonal's electroplating products, including
its products intended for use in tin and/or tin-lead electroplating, were and continue to be

---

[1]     As referred to herein "Shipley" shall include LeaRonal, Inc. and its affiliates which were
acquired by Shipley during January 1999.

NY2 - 1081108.1

maintained as confidential/trade secrets. These formulations have not been nor are they ever disclosed to anyone (absent a confidentiality agreement), including customers.

4.      Moreover, all research and development information including, but not limited to, laboratory notebooks, formula sheets, product specifications, manufacturing procedures, and quality control test results, concerning LeaRonal's commercial electroplating products, including those intended for use in tin and/or tin-lead electroplating, are and continue to be confidential/trade secrets of Shipley, i.e., not disclosed to anyone outside Shipley absent a confidentiality agreement and only known by those within Shipley with a need to know.

5.      LeaRonal also does not (nor has it ever) publicly disclose commercial sales information on its individual products. Shipley considered and continues to consider this information confidential commercial information, disclosure of which would provide competitors with an unfair commercial advantage.

6.      To maintain the confidential/trade secret status of the compositions and research and development of LeaRonal's tin and/or tin-lead electroplating products, all employees who are exposed to confidential information were and are required to sign a Confidentiality/Non-Disclosure Agreement as a condition of their employment or an employment agreement including confidentiality and non-disclosure obligations.

7.      Moreover, in a recent litigation between Ishihara and LeaRonal a Protective Order was entered into through which the parties acknowledged that certain confidential/trade secret information produced by a party would not be disseminated to anyone other than outside litigation counsel. For example, formulation, research and development and commercial information on LeaRonal's products were stamped "Confidential-Attorneys' Eyes Only"

2

NY2 - 1081108.1

meaning only Ishihara's outside litigation counsel (and their agents) could review LeaRonal's information. Thus, LeaRonal has always maintained the confidential/trade secret nature of the type of information currently sought by Ishihara.

8.    Products of the type that are the subject of Ishihara's discovery requests have been and continue to be of great commercial value to Shipley, accounting for an average of $40 million per year in sales worldwide. I have been informed that all information submitted to the Japanese Patent Office in an invalidity proceeding becomes public record. Moreover, Ishihara is and was a direct worldwide competitor of Shipley in the tin and/or tin-lead electroplating market. Disclosure of confidential/trade secret information to the public and/or to a direct competitor like Ishihara would have a detrimental effect on Shipley by giving competitors an unfair commercial advantage in their research and development efforts. Based on the proposed Ishihara discovery, competitors would be able to simply reproduce Shipley's electroplating products without incurring the expense and effort borne by Shipley. Such duplication will harm Shipley by eroding their many years of effort and diminishing their market position.

9.    LeaRonal had a commercial product line for tin and/or tin-lead electroplating comprising approximately 150 different products.

10.    LeaRonal consisted of eleven (11) entities, ten of which were foreign subsidiaries located worldwide. Today, all but one of these entities still exist as part of Shipley.

NY2 - 1081108.1

I declare under the penalty of perjury the foregoing is true and correct.

Dated: _May 17, 2000_

_Richard B. Kessler_

Richard B. Kessler

NY2 - 1081108.1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

In re: The Application of ISHIHARA CHEMICAL CO., LTD. for an ORDER TO TAKE DISCOVERY OF SHIPLEY COMPANY, L.L.C., PURSUANT TO 28 U.S.C. § 1782

Misc. 99-232 (FB)

## DECLARATION OF NAOKI MATSUMOTO

I, Naoki Matsumoto, on penalty of perjury hereby declare and say:

1. I am and have been a duly licensed attorney-at-law in Japan since 1987. For approximately ten years, I have practiced law substantially in Japan concerning patent related matters. From 1990 through 1991, I studied at New York University's School of Law and received a Master of Comparative Jurisprudence. In 1991, I also passed the New York State Bar Examination. From 1991 through 1992, I worked at Brown & Bain, a law firm in Palo Alto, California, as a Japanese Law Consultant concerning discovery matters as they related to the law firm's Japanese corporate clients.

2. I submit this declaration in support of Shipley L.L.C.'s ("Shipley") motion to vacate a court Order and deny discovery that was granted upon Ishihara Chemical Co.'s ("Ishihara") Application pursuant to 28 U.S.C. § 1782.

3. Under Japanese law, unlike that in the United States, a litigant's discovery rights are extremely limited and rarely available in any form. Discovery related matters before Japan's Patent Office (JPO), to the extent any discovery rights exist, is governed by Japan's Civil Procedure Code (JCPC) and Japan's Patent Law (JPL).

NY2 - 1078920.1



4.     In a proceeding before the JPO, interrogatory requests and requests to admit, as meant by the United States Federal Rules of Civil Procedure, are not available to a party. No legal authority, statutory or otherwise, makes interrogatories or admission requests discoverable in any form for an invalidity proceeding before the JPO.

5.     Japan's law does not provide a pre-trial or pre-hearing (for JPO proceedings) discovery phase that allows for the deposition of a witness as in the United States. The JPO may only issue an order to call a witness to testify before it during the proceeding. *See* JPL Article 151 (discussing JCPC Article 190). Moreover, after thoroughly researching the issue, I am not aware of any case in which the JPO utilized such authority and issued an order for a witness to appear before it to testify at a hearing.

6.     While the JCPC has recently authorized a Court to order the production of documents (JCPC Article 220, effective January 1, 1998), after substantial research concerning same, I am not aware of any case where such an order was issued. It is my belief that there has never been an instance where the JPO compelled a party to produce documents.

7.     With respect to the confidentiality of documents submitted to the JPO, the public has access to any and all documents submitted to the JPO that are used in an invalidity proceeding. *See* JPL Article 186. While Article 186 authorizes the Commissioner of the JPO to maintain the confidentiality of trade secrets disclosed during an invalidity proceeding upon a petitioner's request, this is rarely done. In fact, after thoroughly researching the issue, I am not aware of a single instance where the JPO maintained the confidentiality of any document submitted during an invalidity proceeding because of trade secrets. Moreover, I contacted the SHINPAN KIKAKU-SHITSU, the procedural planning section of the JPO responsible for implementing

-2-

NY2 - 1078920.1

internal guidlines in support of JPL statutory provisions, and was informed by a staff member that they are also not aware of any instance where any document submitted during an invalidity proceeding was made confidential because of trade secrests. It is important to note that there are no JPO internal guidelines (an extremely abnormal, if not a unique situation for JPO procedures) clarifying any right to maintain the confidentiality of documents submitted during an invalidity proceeding because of trade secrets. This helps explain why there appears to be no instance when a document's confidentiality was maintained because of trade secrets.

All of the above statements are truthful, and I understand that any false statements are subject to the laws of perjury under the laws of the United States.

Dated: 18 May 2000

Naoki Matsumoto
Matsumoto Law Office
Fujibo Bldg. 6F
10-28 Fujimi 2-chome
Chiyoda-ku Tokyo 102-0071 Japan

NY2 - 1078920.1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

MISC.
Case No. 99–232 (FB)

—   in the matter of   —


IN RE: THE APPLICATION OF ISHIHARA CHEMICAL CO., LTD.,
FOR AN ORDER TO TAKE DISCOVERY OF
SHIPLEY COMPANY, L.L.C.,
PURSUANT TO 28 U.S.C. § 1782


DECLARATION OF
HANS SMIT,
STANLEY H. FULD PROFESSOR OF LAW,
COLUMBIA UNIVERSITY

TABLE OF CONTENTS

PAGE

I.    QUALIFICATIONS    ...............................................    2

II.    FACTS    ...............................................    5

III.    QUESTIONS    ...............................................    6

IV.    OPINION    ...............................................    6

    A.    The Principal Issues That Must Be Addressed    .............    6
    B.    Section 1782 Does Not Authorize Obtaining Testimony
        Or Documents From A Party    .............................    7
    C.    Section 1782 Covers Only Evidence Located in the
        United States    .............................    9
    D.    Is the Japanese Patent Office "A Foreign Tribunal?"    ...........    10
    E.    Is The Evidence Sought "For Use" In A Proceeding?    ..........    11
    F.    Section 1782 Does Not Authorize Admission Requests Or
        Interrogatories    .............................    11
    G.    The Court Has, In Any Event, Discretion To Deny The
        Application    .............................    12

V.    CONCLUSIONS    .............................    14

United States District Court
For the Eastern District of New York

———————————————————X
                                   :        Misc.

In re: The Application of           :        99–232 (FB)

Ishihara Chemical Co., Ltd.,      :        Declaration of

For an order to take discovery of  :        Hans Smit,

Shipley Company, L.L.C.,       :        Stanley H. Fuld Professor of Law,

Pursuant to 28 U.S.C. § 1782    :        Columbia University

———————————————————X

Hans Smit, a member of the Bar of the State of New York, on penalty of perjury, declares as follows:

## I.    QUALIFICATIONS

1.    I am the Stanley H. Fuld Professor of Law and Director of the Center for International Arbitration and Litigation Law at Columbia University.

2.    I obtained LL.B. (1946) and LL.M. (1949) degrees, with the highest distinction, from the University of Amsterdam. In 1953, I was a Fulbright Scholar at Columbia University, earning an M.A. degree. I obtained an LL.B. degree from Columbia University in 1958, graduating first in my class. At Columbia, I was designated a James Kent Scholar in all of my years, won various prizes, and was an editor of the Columbia Law Review.

2

3.      In 1960, I joined the Columbia Law School Faculty. Before that time, I had practiced law in leading law firms in The Hague (now de Brauw & Blackstone) and New York (Sullivan & Cromwell).

4.      I have, on a number of occasions, been a Visiting Professor of Law at the University of Paris I (Sorbonne), which, in 1990, awarded me an honorary doctorate. I created the Leyden–Amsterdam–Columbia Program in American Law at the University of Leyden and Amsterdam and the Double Degree Program between Columbia and Paris I. I have been elected a member of The Netherlands Royal Academy of Arts and Sciences and was named a Knight in the Order of The Netherlands Lion by the Queen of The Netherlands. I attach my curriculum vitae as Appendix 1 to this Declaration.

5.      At Columbia, I have taught civil procedure, conflict of laws, international law, international arbitration, and international business transactions. I have authored numerous law review articles and books. A summary thereof is attached hereto as Appendix 2.

6.      I have acted as an expert on foreign law as well as American foreign relations law and conflict of laws on numerous occasions, in both federal and state courts. I have also acted repeatedly as an expert on American law in foreign and international tribunals. I have extensive experience as an arbitrator in international

3

arbitrations. I am the Editor–in–Chief of The American Review of International Arbitration.

7.    In June 1960, I was appointed the Director of the Project on International Procedure at the Columbia Law School. In that capacity, I also acted as the Reporter to the United States Commission and Advisory Committee on International Rules of Judicial Procedure (the "Commission"), bodies created by act of Congress and charged with the task of studying American rules relating to litigation with international aspects and of proposing appropriate legislative reforms. The Project, under a grant made by the Carnegie Corporation, assumed primary responsibility for conducting the appropriate studies and preparing proposed legislative reforms.

8.    In my capacity of Reporter to the Commission, I analyzed existing rules, determined their deficiencies, and formulated proposals for reform. After having passed through drafting sessions with members of the Advisory Committee and members of the Advisory Committee of the Columbia Project, these proposals were submitted to the Commission, which, after making such changes as they deemed appropriate, submitted them to appropriate legislative bodies – to wit, the U.S. Congress, the Commissioners on Uniform State Laws, and the Advisory Committees on Civil and Criminal Rules of Procedure of the Judicial Conference

4